UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GLENDA M. D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-03313-DLP-JPH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Plaintiff Glenda M. D. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

I.   PROCEDURAL HISTORY

On August 20, 2018, Glenda filed her applications for Title II DIB and Title XVI SSI benefits. (Dkt. 13-2 at 16, R. 15). Glenda alleged disability resulting from a shoulder and arm injury, depression, sciatica, a herniated disc, and short-term

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

memory loss. (Dkt. 13-6 at 15, R. 218). The Social Security Administration ("SSA") denied Glenda's claims initially on January 11, 2019, (Dkt. 13-3 at 26-27, R. 75-76), and on reconsideration on April 10, 2019, (Dkt. 13-3 at 52-53, R. 101-102. On April 25, 2019, Glenda filed a written request for a hearing, which was granted. (Dkt. 13-4 at 28, R. 129).

On June 3, 2020, Administrative Law Judge ("ALJ") David Read conducted a hearing, where Glenda and vocational expert Heather Benton appeared by phone. (Dkt. 16-2 at 3, R. 544). On June 25, 2020, ALJ Read issued an unfavorable decision finding that Glenda was not disabled. (Dkt. 13-2 at 16-27, R. 15-26). Glenda appealed the ALJ's decision and, on November 12, 2020, the Appeals Council denied Glenda's request for review, making the ALJ's decision final. (Dkt. 13-2 at 2-4, R. 1-3). Glenda now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work

experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (a negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a

claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform ers own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is

not whether Glenda is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

5

### III. BACKGROUND

#### A. Factual Background

Glenda was fifty-nine years old as of her July 1, 2018 alleged onset date. (Dkt. 13-6 at 22, R. 225). She has a high school diploma. (Dkt. 13-6 at 16, R. 219). She has relevant past work history as a supervisor in a contract-sheltered workshop and a home attendant. (Dkt. 13-2 at 27, R. 26).

#### B. ALJ Decision

In determining whether Glenda qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Glenda was not disabled. (Dkt. 13-2 at 16-26, R. 15-25). At Step One, the ALJ found that Glenda had not engaged in substantial gainful activity since her alleged onset date of July 1, 2018. (Id. at 18, R. 17).

At Step Two, the ALJ found that Glenda suffered from the following severe impairments: degenerative joint disease of the right shoulder, status post fracture with open reduction and internal fixation (ORIF) and carpal tunnel syndrome, right. (Id.). The ALJ also found that Glenda had non-severe impairments of degenerative disc disease of the lumbar spine, depression, and anxiety. (Id. at 19-20, R. 18-19). When considering the "paragraph B" criteria, the ALJ found that Glenda had no limitations with interacting with others, but mild limitations with understanding, remembering, or applying information, managing oneself, and maintaining concentration, persistence, or pace. (Id. at 21, R. 20).

6

At Step Three, the ALJ found that Glenda's impairments did not meet or medically equal the severity of one of the listed impairments in the Listings, specifically considering Listing 1.02 for major dysfunction of a joint and Listing 11.00 for carpal tunnel syndrome. (Id. at 19-20, R. 19-20).

After Step Three but before Step Four, the ALJ found that Glenda had the residual functional capacity ("RFC") to perform light work with the following exertional limitations: lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, and walking for 6 hours; no more than occasional reaching overhead with the right upper extremity and frequent reaching in all other directions with the right upper extremity; frequently handle and finger with the right hand; no more than occasional climbing of ladders, ropes, or scaffolds; and no more than occasional work at unprotected heights. (Dkt. 13-2 at 22-23, R. 21-22).

At Step Four, the ALJ concluded that Glenda is capable of performing her past relevant work as a supervisor at a contract sheltered workshop. (Dkt. 13-2 at 27, R. 26).  The ALJ thus concluded that Glenda was not disabled. (Id.).

IV.   ANALYSIS

Glenda challenges the ALJ's decision on two grounds. First, Glenda contends that the ALJ erred by concluding that she could return to her work as a supervisor at a contract sheltered workshop because that role was performed as part of a composite job, which requires a different Step Four analysis. (Dkt. 18 at 9-15; Dkt. 21 at 1-8). Second, Glenda argues that the ALJ erred in finding she had mild

difficulties in his ability to sustain concentration, persistence, or pace, while failing to include any corresponding limitations in the RFC evaluation. (Dkt. 18 at 15-18; Dkt. 21 at 8-12). The Court will consider these arguments in turn.

### A. Composite Job

First, Glenda argues that the ALJ erred by not considering her past relevant work as a composite job, which led to an inaccurate Step Four conclusion that she could return to her past work as a supervisor. (Dkt. 18 at 9-15; Dkt. 21 at 1-8). The Commissioner maintains that Plaintiff did not meet her burden of demonstrating that her past relevant work was a composite job and that the issue is effectively waived because neither Plaintiff nor her attorney objected to the vocational expert's classification of her work history at the hearing. (Dkt. 19 at 11-15).

A claimant is not disabled if she can do her past relevant work either in the manner she performed it before the impairment or as it is generally performed in the national economy. *See Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019); *see also* 20 C.F.R. § 404.1560(b)(2). "In determining whether a claimant can perform his or her past relevant work, the ALJ may be able to rely on a generic job description in the DOT. There are instances, however, in which the claimant's job has no precise counterpart in the DOT." *Vickie H. v. Berryhill*, No. 1:18-cv-00351-SEB-DLP, 2019 WL 1370700, at *3 (S.D. Ind. Mar. 1, 2019), report and recommendation adopted sub nom. *Vickie L. H. v. Berryhill*, No. 1:18-cv-00351-SEB-DLP, 2019 WL 1367537 (S.D. Ind. Mar. 26, 2019). "Vocational Experts often supplement the information provided in the DOT by providing an impartial assessment of the types

of occupations in which claimants can work and the availability of positions in such occupations. The decision whether to employ a VE at a hearing is a matter entrusted to the discretion of ALJs, but once an ALJ decides to rely on a VE's testimony, he must make sure that the testimony comports with the rules set forth in the Commissioner's Social Security Rulings." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal citations omitted).

As the Seventh Circuit has explained, Social Security Ruling 00-4p requires an ALJ to ask whether a VE's evidence "conflicts with information provided in the DOT"' before relying on that evidence to support a determination of nondisability. *Overman v. Astrue*, 546 F.3d 456, 462–63 (7th Cir. 2008) (citing SSR 00–4p at 4). If a VE's testimony appears to conflict with the DOT, then the ALJ is required to obtain "a reasonable explanation for the apparent conflict." *See* SSR 00-4p; *Overman*, 546 at 463 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)). The ALJ must also "explain in the determination or decision how he or she resolved the conflict." *Jerry Z. v. Saul*, No. 1:19-cv-3022-MJD-JPH, 2020 WL 4034930, at *4 (S.D. Ind. July 16, 2020) (citing SSR 00-4p).

Generally, when a claimant fails to object to a vocational expert's testimony at the hearing, the ALJ is entitled to rely on that unchallenged testimony when determining whether a claimant can perform her past work. *Dwight W. B. v. Kijakazi*, No. 1:20-cv-02048-JPH-DML, 2022 WL 985733, at *5 (S.D. Ind. Mar. 31, 2022) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Because SSR 00–4p, however, imposes an affirmative duty on the ALJ to inquire into and resolve

9

apparent conflicts, a claimant's failure to raise a possible violation of SSR 00–4p at the disability hearing does not forfeit the right to argue later that a violation occurred, as long as "the conflicts were obvious enough that the ALJ" should have noticed and resolved the conflict. *Overman*, 546 F.3d at 463 (7th Cir. 2008); *see also Ray,* 915 at 492 (7th Cir. 2019) (if the VE's testimony appears to conflict with the Dictionary of Occupational Titles, an ALJ must obtain a reasonable explanation for the apparent conflict, even if the claimant does not object at the hearing).

In this case, Glenda argues that the ALJ erred by not considering whether her past relevant work as a supervisor constituted a composite job, which resulted from the ALJ failing to resolve the apparent conflict between the DOT definition of her supervisor position and the duties Glenda claimed she performed. For determining whether a claimant's past relevant work constitutes a composite job, Social Security Ruling 82-61 advises that "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." *See Wiggins v. Colvin*, No. 12-CV-938417, 2015 WL 2398478, at *5 (N.D. Ill. May 18, 2015) ("Because by definition a composite job will have no DOT counterpart, the ALJ may rely on evidence provided by a vocational expert to explain the nature of the claimant's past relevant work.").

The agency's Program Operations Manual ("POMS") explains:

> Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT . . . . The claimant's PRW [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main

10

> duties of the PRW as described by the claimant . . . . When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job. . . . . A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'

*Dorrie L. B. v. Comm'r of Soc. Sec.*, No. 18-CV-0007-CJP, 2018 WL 6046148, at *4 (S.D. Ill. Nov. 19, 2018) (quoting POMS DI 25005.020, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020, visited on November 19, 2018). When confronted with a situation where the record does not clearly demonstrate that a claimant's past work was a composite job, courts in this Circuit have examined several factors in reviewing the ALJ's determination, including (1) whether a claimant was represented by counsel during the hearing before the ALJ; (2) whether a claimant raised the issue of a composite job at the hearing; and (3) whether a claimant characterized her past relevant work as a composite job in her testimony before the ALJ. *See Sonja B. v. Kijakazi*, No. 3:20-cv-00284-RLY-MPB, 2022 WL 2496127, at *5 (S.D. Ind. June 21, 2022), report and recommendation adopted, No. 3:20-cv-00284-RLY-MPB, 2022 WL 2479233 (S.D. Ind. July 6, 2022) (collecting cases).

First, Glenda was represented by counsel at her hearing in front of the ALJ. Second, during that hearing, neither Glenda nor her counsel officially raised the issue of whether her past relevant work constituted a composite job. Third, however, consistently throughout her written submission of and testimony at the hearing regarding her job duties, Glenda provided a description of her past work

11

that should have alerted both the vocational expert and the ALJ that the position may be composite and that a discrepancy may have existed between the DOT definition and the position actually performed by Glenda.

Here, the vocational expert and ALJ classified Plaintiff's past relevant work as a supervisor of a contract-sheltered workshop (187.134-010) and a home attendant (354.377-014). Plaintiff's argument centers on the position of supervisor of a contract-sheltered workshop, which the Dictionary of Occupational Titles ("DOT") describes as follows:

> Supervises and coordinates activities of handicapped individuals in sheltered workshop to train and improve vocational skills for gainful employment through productive work: Assigns individual to specific tasks, such as cleaning, sorting, assembling, repairing, or hand packing products or components. Demonstrates job duties to handicapped individual and observes worker performing tasks to ensure understanding of job duties. Monitors work performance at each individual's work station to ensure compliance with procedures and safety regulations and to note behavior deviations. Examines workpiece visually to verify adherence to specifications. Confers with individuals to explain or to demonstrate task again to resolve work related difficulties. Reassigns individual to simpler tasks when worker cannot perform assigned tasks, or to tasks containing higher degrees of complexity as level of competence is reached. Performs other duties described under SUPERVISOR (any industry) Master Title.

187.134-010 Supervisor, Contract-sheltered Workshop, 1991 WL 671360. The job requires no climbing, balancing, stooping, kneeling, crouching, or crawling. *Id*.

Plaintiff provided a written description to the SSA and testimony at the hearing of the duties required of her supervisor position. (*See* Dkt. 13-6 at 12, R. 215; Dkt. 13-2 at 40, 47-48, R. 39, 46-47). In her written description, Glenda

indicated she "supervised 16 disabled adults in workshop setting providing sub-contract work, job set up training, packaging, counting, final inspecting, stacking skids, moving skids, shrink wrapping. Documentation of each client payroll, daily activities, behavior logs, medications, objective goals. Attending daily meetings and in-service trainings." (Dkt. 13-6 at 12, R. 215). She further noted that she spent one half hour per day each of stooping, kneeling, and crouching. (Id.). Glenda also indicated that she frequently lifted 25 pounds, lifted up to approximately 50 pounds, and had to stack skids of finished product weighing 40 pounds or more for approximately 2 hours of the workday. (Id.). At the hearing, the ALJ asked Glenda about the heaviest items she would have to personally lift or carry, and she testified that she would have to lift 50-60 pound boxes or transfer her clients from a chair to a toilet. (Dkt. 13-2 at 40, R. 39). Glenda further testified that performing CPR is a requirement to work at either of her past relevant jobs, and that she is unable to perform CPR currently due to her arm limitations. (Id. at 47-48, R. 46-47).

      The DOT lists the main job duties of the contract-sheltered workshop supervisor as supervising and coordinating activities; assigning tasks; demonstrating job duties; monitoring work performance; examining workpieces; and reassigning tasks. What the Plaintiff has described in her written submission and testimony is a far more physical job, one that requires her to spend almost one-third of her workday on lifting and carrying 50-60 pounds of finished products, while stooping, kneeling, and crouching, and assisting her clients to the toilet – none of

these activities are contemplated in the DOT definition of the supervisor role. (Dkt. 13-6 at 12, R. 215; Dkt. 13-2 at 40, 47-48, R. 39, 46-47).

Although it is correct that Plaintiff and her counsel failed to object to the vocational expert's testimony at the hearing, Glenda presented evidence that her supervisor position may have been a composite job, thereby creating an apparent discrepancy between the vocational expert's testimony and the DOT. Thus, the ALJ was required to explain how this conflict was resolved before concluding that Glenda could perform her past relevant work. *See Jerry Z.*, 2020 WL 4034930, at *4 (evidence indicated the claimant's job may have been composite and the ALJ erred by not addressing this issue in his decision); *Kimberly L.D. v. Commissioner of Social Security*, No. 18-cv-890-CJP, 2019 WL 247411 (S.D. Ill. Jan. 17, 2019); *Barnett v. Colvin*, No. 13-cv-781-CJP, 2014 WL 7450077, at *6-7 (S.D. Ill. Dec. 30, 2014); *Michalski v. Berryhill*, No. 16-C-1590, 2017 WL 4081905, at *5 (E.D. Wis. Sept. 14, 2017).

For example, in *Cabaniss v. Colvin*, No. 13 CV 4244, 2014 WL 7450435 (N.D. Ill. Dec. 30, 2014), there was no explicit discussion during the hearing or in the ALJ's decision about whether the claimant's job was composite. At the hearing, however, the claimant provided a description of his job duties that was sufficient to alert the ALJ as to the possibility of it being a composite job. *Id* at *12. Therefore, the court found that the ALJ's opinion was not supported by substantial evidence and remanded the case with instructions for the ALJ to consider both parts of the claimant's composite job. *Id*. Similarly, here, Glenda provided both written and oral

descriptions of her job duties that should have alerted the ALJ to the possibility of her supervisor position being a composite job. Glenda's duties seem to have extended beyond the realm of supervising and managing, and a significant portion of her duties encompassed physical activities more akin to other jobs. Plaintiff contends that her position as a supervisor was a composite of the supervisor job, along with a laborer and home attendant, and has presented evidence that would support such a conclusion. The Court's role is not to affirmatively decide whether the supervisor role was composite, but instead to determine whether the Plaintiff has presented sufficient evidence that should have alerted the ALJ to consider whether the job was composite. *See Sonja B.*, 2022 WL 2479233 (citing *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Glenda has met that burden here and this matter must be remanded for the ALJ to consider fully whether her past work as a supervisor constituted a composite job.

### B. Mental RFC

Glenda also argues that the ALJ failed to account for her mild limitations in understanding, remembering, or applying information; adapting or managing oneself; and maintaining concentration, persistence, or pace in the RFC assessment. (Dkt. 18 at 15-18; Dkt. 21 at 8-12). The ALJ assessed non-severe impairments of depression and anxiety, but assigned no non-exertional functional limitations in the RFC; thus, Plaintiff contends, the ALJ failed to account for all of her impairments or explain why no RFC limitations were warranted. (Id.). Glenda proposes that a limitation to "simple and repetitive (unskilled) work" would accommodate her mild

15

mental impairments. (Dkt. 21 at 12). In response, the Commissioner asserts that the ALJ's failure to include non-exertional limitations in the RFC was intentional and supported by substantial evidence. (Dkt. 19 at 6-11).

When crafting a claimant's RFC, an ALJ must incorporate all of a claimant's limitations in the assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Both an RFC assessment and the hypothetical posed to the vocational expert must account for documented limitations of concentration, persistence, or pace. *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

As noted above, in the Step Two analysis, the ALJ found that Glenda has mild limitations in three of the four "paragraph B" criteria – understanding, remembering, and applying information; adapting or managing oneself; and maintaining concentration, persistence, or pace. (Dkt. 13-2 at 21-22, R. 20-21). The ALJ considered Glenda's mental limitations in the "paragraph B" analysis and when weighing the opinions of the state agency psychological consultants.[2] (Dkt. 13-2 at 23, R. 22). In the RFC section, however, the ALJ included no non-exertional

---

[2] At the end of the "paragraph B" analysis, the ALJ explained that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Dkt. 13-2 at 22, R. 21).

16

limitations to address any of the "paragraph B" criteria. Even if the ALJ had reviewed Glenda's records and concluded that no functional limitations were warranted, he was still required to explain how he arrived at that conclusion. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ is not required to mention every piece of evidence but must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, in order to promote meaningful judicial review); *Russell G. v. Saul*, No. 1:18-cv-02785-DLP-TWP, 2019 WL 4409358, at *9 (S.D. Ind. Sept. 16, 2019) (ALJ required to explain why limitations were not warranted, especially where a limitation would render claimant disabled).

      The Commissioner contends that the ALJ intentionally did not include mental limitations in the RFC because any such limitations are not supported by the evidence in the record. (Dkt. 19 at 6-11). The Court cannot accept this contention, however, because the ALJ did not indicate that the record supported including no mental RFC limitations. The Court's review is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23,

2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization).

It may well be true that the ALJ considered Glenda's mental limitations and concluded that no functional limitations in the RFC were warranted, and that decision would be fully within the ALJ's discretion to make. The ALJ errs here, however, by remaining silent on the topic of mental limitations, leaving the Court without any opportunity for meaningful review of the ALJ's reasoning. *See Julie J. v. Kijakazi*, No. 1:20-cv-01597-SEB-DLP, 2021 WL 4437587, at *2 (S.D. Ind. Sept. 28, 2021) (ALJ erred by failing to explain why no mental limitations were warranted, despite having assessed mild limitations in all four areas of mental functioning); *Hiatt v. Colvin*, No. 1:12-cv-01438-TWP-TAB, 2014 WL 1048894, at *6 (S.D. Ind. Mar. 18, 2014) (remand appropriate where ALJ's opinion was silent on whether ALJ considered impairment when crafting the RFC); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011) (remand appropriate where ALJ was silent on case dispositive issue of need to elevate legs).

At present, the Court is left to guess what the ALJ considered and why he did not include any limitations that addressed Glenda's difficulties with understanding, remembering, and applying information, adapting or managing oneself, and maintaining concentration, persistence, or pace. In his Step Two analysis, the ALJ found mild limitations because of Glenda's memory difficulties during the consultative exam and during a neuropsychological evaluation and Glenda's self-

18

reports of difficulties with concentration and focus and handling stress. (Dkt. 13-2 at 21, R. 20). These reasons seem to indicate that the ALJ credited some evidence in the record for demonstrating Glenda's issues with concentration, persistence, and pace and understanding, remembering, or applying information. The ALJ's opinion lacks a logical bridge that connects the evaluation of the evidence to the end result of no functional limitations being included in the RFC to address Glenda's difficulties with understanding, remembering, or applying information or maintaining concentration, persistence, or pace.

Whether the ALJ assigned the appropriate non-exertional limitations is vitally important to Glenda's case, because the addition of a common non-exertional limitation to "unskilled work" would render a finding that Glenda is disabled, per the vocational expert's testimony. (Dkt. 16-2 at 6, R. 547). As such, the Court cannot consider the ALJ's failure to be harmless error. *See Daugherty v. Berryhill*, No. 1:18-cv-256, 2019 WL 2083033, at *14 (N.D. Ind. May 13, 2019) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)) (remand appropriate where ALJ was silent on a case dispositive piece of evidence, "despite the ALJ's duty to acknowledge dispositive evidence"). Moreover, the ALJ's conclusion that Glenda is not disabled was based on her ability to perform her past relevant work as a supervisor in a contract-sheltered workshop, which is a skilled position – however, "even mild limitations in domains like concentration, persistence, or pace can impact a claimant's ability to work in skilled or semi-skilled positions." *Pamela J. B. v. Saul*, No. 19 C 6800, 2021 WL 963765, at *4 (N.D. Ill. Mar. 15, 2021) (quoting

*Lawrence J. v. Saul*, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020); *see also Cheryl C. v. Berryhill*, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019) (finding that the job responsibilities of a billing clerk, a semi-skilled position with an SVP of 4, is of "sufficient complexity that even mild limitations in daily activities, social functioning, or concentration, persistence, or pace could impact and individual's ability to perform" the position).

Because the ALJ fails to provide a logical bridge between the evidence and his conclusions, the Court concludes that the ALJ's opinion is not supported by substantial evidence, and this case must be remanded for further consideration.

### V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 8/2/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email